**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHANIE M. SEIFERT<br>1223 Scott Street<br>Kulpmont, PA 17834<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH LLC<br>6550 Carothers Parkway, Suite 500<br>Franklin, TN 37067<br>and<br>WELLPATH HOLDINGS, INC.<br>6550 Carothers Parkway, Suite 500<br>Franklin, TN 37067<br>and<br>CORRECT CARE SOLUTIONS<br>3440 Perimeter Hill Drive<br>Nashville, TN 37211<br><br>Defendants. | : | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Stephanie Seifert (hereinafter referred to as "Plaintiff," unless indicated otherwise) against Wellpath LLC and Wellpath Holdings, Inc. (hereinafter collectively referred to as "Defendants") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 et. seq.), Family Medical Leave Act ("FMLA"- 29 U.S.C. §2601, et. seq.) and the Pennsylvania Human Relations Act ("PHRA").[1] As

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes only. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC (unless the PHRC closes her case sooner). Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA. Plaintiff's PHRA claims will mirror identically her federal claims set forth below (upon moving to amend the instant lawsuit).

a direct consequence of Defendants' unlawful actions (wrongful termination from employment), Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies future supplemental jurisdiction over Plaintiff's future state law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) an (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual with an address as set forth in the caption.

8. Defendants' collective enterprise engages in the business of providing placement of its employees within correctional facilities to provide various services, including mental healthcare.

9. Defendants operate through more than 10,000 employees in more than 30 states providing primarily outsourced medical and mental healthcare to inmates within jails and correctional facilities.

10. Defendants should be considered Plaintiff's joint and/or integrated employer because both Defendants had control over the terms and conditions of Plaintiff's employment, including compensation, hiring, firing and daily supervision.

11. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12. Plaintiff is a 47-year-old female.

13. Plaintiff was hired by Defendants on or about October 10, 2023, as a Clinical Coordinator.

14. Defendants placed Plaintiff to work within the State Correctional Institution at Coal Township ("SCI Coal Township") in Pennsylvania.

15. Plaintiff worked as a Clinical Coordinator from in or about October 2023 to August 2024.

16. In this role, Plaintiff was supervised by Jamie Larkin and Dan Ritter, Defendants' District Manager.

17. On or about August 8, 2024, Plaintiff was promoted to a Health Services Administration role.

18. In this position, Plaintiff was supervised by Dan Ritter and Tyler Helms (Defendants' Senior Vice President).

19. Plaintiff was qualified for the jobs she held, as she possessed the requisite skill and knowledge to perform the job duties.

20. Plaintiff performed well in these positions and was praised for her satisfactory performance.

21. In or about November of 2024, Plaintiff took a medical leave of absence due to suffering a stroke.

22. Plaintiff returned from this medical leave in approximately January of 2025.

23. In or about March 2025, two months after taking a medical leave, Ritter suddenly informed Plaintiff that her performance in the Health Services Administrator role was deficient and that she should attempt to find another role.

24. Plaintiff asked for clarification but received no specific criticism. Nonetheless, Plaintiff applied, interviewed, and received a position as a PADOC Regional MAT Administrative Assistant, primarily working remotely from her residence in Kulpmont, PA.

25. During this period, Plaintiff was deemed to work out of Defendants' regional office in Lemoyne, PA.

26. When Plaintiff commenced this role, she was supervised by Tyler Helms and then transitioned to Amye Kerstetter (hereinafter "Kerstetter") in or about the spring of 2025.

27. Unfortunately, Plaintiff suffers from significant health issues including degenerative disc disease, spondylosis, severe nerve impingement, and spinal stenosis, resulting

in loss of function in her hand and arm, neck and back issues, nerve complications, and other associated complications.

28. Plaintiff's medical conditions interfere with her daily bodily and life functions, including typing, working, feeling, lifting, and grasping, among others.

29. However, Plaintiff was able to perform all the essential functions of her job, with accommodations.

30. In the months leading up to Plaintiff's termination, Plaintiff extensively discussed her health problems with Defendants' management, including Kerstetter, Helms and Human Resources Business Partner Devin Carper, including informing them about her potential need for spinal surgery.

31. On or about August 4, 2025, Plaintiff requested that her hours be reduced from 40 to 30 hours per week (a reasonable accommodation under the ADA) in part so that she would be eligible for Medicaid to treat for her disabilities and also to lessen the pain and flare ups of her condition with a lighter schedule.

32. Importantly, Plaintiff made this request only if feasible and continued to work full-time until the time her request was denied and then attempted to proceed with filing for FMLA leave.

33. Plaintiff received a response from Defendants' Human Resources office denying her request for accommodation.

34. Defendants failed to engage in any further discussion with Plaintiff regarding her request for accommodation.

35. Plaintiff then received a letter dated August 6, 2025 from Defendants stating that "FMLASource has received your request from leave from your position at Wellpath for your own

serious health condition."

36. Kerstetter was copied on several FMLA-related email communications (as of this date and others), and thus it was known to her that Plaintiff was seeking FMLA leave.

37. Plaintiff additionally kept Kerstetter updated on her medical conditions in multiple conversations.

38. From on or about August 6, 2025 to on or about August 11, 2025, Plaintiff experienced a flare-up of her disabilities and contacted Kerstetter at least two hours before her shift (per proper call out procedure) and identified the specific nature of her absence.

39. Despite this, Defendants failed to designate Plaintiff's August 6 - 11, 2025 absences as FMLA leave.

40. From on or about August 12, 2025 through August 15, 2025, Plaintiff attempted to resume working in between disability flareups since Defendants' management was failing to handle certain matters during her medical absences and causing workplace disruptions. Plaintiff did her best to ensure things ran smoothly, even as she struggled with her health.

41. During this period, Plaintiff sought and obtained medical treatment at the emergency department and urgent care.

42. Following her request for FMLA leave, Plaintiff was informed that she had until August 22, 2025, to submit an FMLA certification.

43. On or about August 15, 2025, Plaintiff was in such a state of agony (relative to her health) that she informed Defendants' management that she needed to use medical leave effective that day.

44. On or about August 15, 2025, ***the same day*** that she requested a medical leave of absence, Plaintiff was contacted by Tyler Helms via phone and terminated.

45. Thus, Plaintiff was terminated one week prior to her ability to file the requested FMLA certification/form and on the same day she requested medical leave.

46. Plaintiff questioned the rationale for her sudden termination and Helms admitted that "the biggest reason" was Plaintiff's request for an accommodation (i.e. to reduce her hours), constituting direct evidence of discrimination.[2]

47. Plaintiff protested and attempted to further explain her situation, but Helms refused to have further discussion and said that the termination decision was final.

48. Upon information and belief, after Plaintiff's termination, Defendants hired and/or transferred a non-disabled employee into her position.

**COUNT I**
**<u>Violations of the Americans with Disabilities Act ("ADA")</u>**
**(1) [Actual/Perceived/Record of Disability Discrimination; (2) Retaliation (3) Hostile Work Environment; and (4) Failure to Accommodate]**

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[2] "Direct evidence" is evidence sufficient to allow the jury to find that "the decision-makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse,* 490 U.S. at 277 (O'Connor, J., concurring); *and see Barron v. Quest Diagnostics, Inc.*, 2010 WL 701956 (E.D.Pa.2010). [E]vidence of remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions all may constitute direct evidence." *Id.*; *Jacobs v. York Union Rescue Mission,* 2014 U.S. Dist. LEXIS 170489, *32-33, 31-34 Am. Disabilities Cas. (BNA) 101 (M.D. Pa. 2014)(finding that because (1) on at least two occasions the plaintiff's supervisor made disparaging remarks which created a direct link between his discriminatory attitude and the plaintiff's prospects for continued employment, despite that the comments were made 6 months prior to her termination, and (2) the supervisor who made these comments was involved in the termination process of plaintiff, such evidence constituted direct evidence sufficient to shift the burden of proof to the defendant employer); *Hudson v. Guardsmark, LLC*, 2013 U.S. Dist. LEXIS 166825, *36-37, 28 Am. Disabilities Cas. (BNA) 1477, 2013 WL 6150776 (M.D. Pa. 2013)(finding direct evidence where supervisor (who did not ultimately make the decision to terminate the plaintiff) made express comments to the plaintiff, prior to his termination, that she was frustrated with the plaintiff's need for time off of work in order to deal with his asserted medical needs and told plaintiff he was being let go because he was missing too much time from work); *Niven-Himes v. Pa. Hosp. of the Univ. of Pa. Health Sys.,* No. 2:20-cv-00558-JMG, 2021 U.S. Dist. LEXIS 219727, at *6 (E.D. Pa. 2021)(decision-maker telling the plaintiff she is a "medical risk" around the time of her termination could lead a reasonable fact finder to conclude that her disability played a role in her termination").

50. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

51. Plaintiff was qualified to perform the essential functions of her job with reasonable accommodations (a reduction in hours and/or intermittent time off from work).

52. Plaintiff kept Defendants' management informed of her aforementioned disabilities and need for accommodations.

53. Plaintiff requested reasonable accommodations from Defendants, including but not limited to a schedule with reduced hours and medical leave.

54. Defendants failed to engage in the interactive process with Plaintiff and/or accommodate Plaintiff as it pertained to her disabilities and requests for accommodations.

55. Plaintiff was terminated shortly after discussing her health conditions with management and requesting accommodations and just hours after requesting medical leave.

56. Based on the foregoing, Plaintiff believes and therefore avers that Defendants failed to accommodate her and that her known and/or perceived disabilities, her records of impairment, and/or her requests for accommodations were motivating and/or determinative factors in Plaintiff's termination.

57. Plaintiff also believes and avers that Defendants terminated her employment in retaliation for request accommodations, in violation of the ADA.

58. The aforesaid actions taken against Plaintiff constitute unlawful discrimination and retaliation in violation of the ADA.

**COUNT II**
**<u>Violations of the Family and Medical Leave Act ("FMLA")</u>**
**(Retaliation & Interference)**

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in

full.

60. Plaintiff was eligible for protected leave under the Family and Medical Leave Act ("FMLA") in 2025, as she worked for Defendants for at least one year and for at least 1,250 hours in the year prior to her 2025 FMLA requests and suffered from a serious health condition under the FMLA.

61. Defendants are "employers" under the FMLA as they are engaged in business affecting interstate commerce and employed 50 or more individuals in 2024 and 2025.

62. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to demote and/or terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) failing to comply with proper notice requirements of the FMLA; (5) failing to properly designate FMLA-qualifying absences; and (6) engaging in conduct that would dissuade a reasonable person from exercising their FMLA rights.

63. These actions as aforesaid constitute unlawful interference and retaliation in violation of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering) where permitted under applicable statutes;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ________________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: January 8, 2026